# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**MARIA ZUNIGA, EMILY HERNANDEZ,**
**JENNIFER GALLEGOS, CASSANDRA GUTIERREZ,**
**PRISCILLA GUTIERREZ, STEPHANIE MANZANARES,**
**and PAT VIGIL, on behalf of themselves and all others similarly situated,**

            **Plaintiffs,**

**vs.**                                                    **Civ. No. 11-877 RHS-ACT**

**BERNALILLO COUNTY, JULIAN BARELA,**
**and DAN MAYFIELD,**

            **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Motion to Compel Defendant Bernalillo County's Answers to Plaintiffs' First Interrogatories and Defendant's Responses to Plaintiffs' Second Request for Production of Documents and Supporting Memorandum [Doc. 42] filed on September 13, 2012 ("First Motion"). Defendant Bernalillo County filed its Response [Doc. 46] on October 3, 2012 ("Response"). Plaintiffs filed their Reply [Doc. 54] ("Reply") and Notice of Completion of Briefing [Doc. 55] on October 24, 2012.

**THIS MATTER** is also before the Court on Plaintiffs' Motion to Compel Defendant Bernalillo County's Responses to Plaintiffs' Third Request for Production of Documents and Supporting Memorandum [Doc. 47] filed on October, 3, 2012 ("Second Motion"). Defendant Bernalillo County filed its Response [Doc. 52] on October 24, 2012 ("Response"). Plaintiffs

filed their Reply [Doc. 60] ("Reply") and Notice of Completion of Briefing [Doc. 61] on November 9, 2012.

The Court, having considered the parties' filings, the relevant law, and otherwise being fully advised, finds that both Plaintiffs' First Motion and Second Motion ("Plaintiff's Motions") will be GRANTED in part, as set forth below.

## INTRODUCTION

### A.  Background Facts

This case arises from Plaintiffs' allegations of discrimination and retaliation by Defendant Bernalillo County ("County" or "Defendant") on the basis of their female gender. The Complaint alleges individual and class action claims, including allegations for gender discrimination under Title VII of the Civil Rights Act of 1964 and the New Mexico Human Rights Act. [Doc. 1, pp. 11 – 16.]  The named Plaintiffs seek class certification for "[a]ll female employees grade C through H who are, were, or will be employed by the County of Bernalillo at any time between June 18, 2008 and the present."  [Doc. 1, p. 9.]

The Court bifurcated class certification discovery and merits discovery.  [Doc. 11 and Doc. 12.]  This case is currently before this Court regarding discovery disputes pertinent to class certification.

### B.  Plaintiffs' Motions are in Violation of the District of New Mexico Local Rules, the Federal Rules of Civil Procedure and the Orders of this Court.

Plaintiffs' Motions are in violation of D.N.M.LR-Civ. 37.1. Local Rule 37.1 requires that a party seeking relief pursuant to Rule 37(a) "must attach to the motion a copy of (a) the interrogatory, request for production or inspection, relevant portion of deposition transcript, or request for admission; and (b) the response or objection thereto." Plaintiffs attach complete copies of the Interrogatories and Requests for Production propounded to Defendant, including

many Interrogatories and Requests for Production that are not at issue and not relevant to the motions. [Doc. 42-1, p. 2; Doc. 42-3, pp. 4, 5, 7, 12; Doc. 42-5, p. 22; Doc. 47-1, pp. 2, 4-7, and 11; Doc. 47-2, pp. 2, 3, 6, 10, 11 and 12-17.]   The Court does not need, nor do the Local Civil Rules require that, all discovery requests and responses be filed with the Court. The Local Civil Rules require only that the party seeking relief attach a copy of the disputed discovery requests, the responses, and objections thereto.

Plaintiffs' Motions are also in violation of D.N.M.LR-Civ. 7.1 and Fed.R.Civ.P. 37(a)(1). Local Rule 7.1 requires "[m]ovant must determine whether a motion is opposed and a motion that omits recitation of a good-faith request for concurrence may be summarily denied." Rule 37(a)(1) requires that "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."   Rather than explaining what efforts were undertaken to determine whether the motion is opposed, Plaintiffs' Motions merely state "[b]ased on the . . . impasse arising from the Fed.R.Civ.P. 37 meet and confer process, the motion is *deemed* opposed." [Doc. 42, p. 1; Doc. 47, p. 1.] (Emphasis added.)   The duty to confer requires more than setting forth conflicting positions in written correspondence.   To confer means more than making a demand for compliance; it means "to hold a conference; compare views; consult together." *Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 635 (D. Colo. 2003).   In this regard, counsel for the Plaintiffs failed to comply with both the letter and the spirit of the Local and Federal Rules of Civil Procedure. [1]

---

[1] It appears the only "meet and confer" which took place was an exchange of lengthy letters. There is nothing in the record to suggest counsel for the Plaintiffs made any additional efforts to resolve these discovery disputes.  Counsel for Plaintiffs simply made a demand in an attempt to meet the "good faith" requirements as mandated by Fed.R.Civ.P. 37(a)(1) and D.N.M.LR-Civ. 7.1(a) rather than demonstrate true compliance. The meet and confer requirement to try to resolve disputes is not simply a formality that must be complied with before filing a motion and it cannot be complied with by merely exchanging letters setting forth each parties position. It requires a face to face, or at a minimum, a telephonic conference wherein counsel try in "good faith" to resolve the dispute by

Even when the County agreed to supplement its response, Plaintiffs included the interrogatory or request for production as part of the motions.  For example, in the First Motion [Doc. 42], the County agreed to supplement its response to Interrogatory Nos. 6, 7, and 8, however, Plaintiffs filed their motion without first receiving this supplementation.  With respect to Request Nos. 2 and 4, it appears the County has produced the documents requested.  With regard to Request No. 19, Plaintiffs seek an order requiring the County to produce what it has already agreed to produce.  It is also apparent that issues regarding other Interrogatories and Requests for Production which were a part of the First Motion were or could have been at least partially resolved had counsel conducted a good faith effort to resolve their discovery disputes rather than simply exchanging lengthy letters setting forth their positions.

The same failure is apparent in the Second Motion [Doc. 47.]  For example, in Request No. 29, Plaintiffs belatedly agree in their Motion to limit the temporal scope of the request. [Doc. 47, p. 9.] Plaintiffs admit there is no real dispute as to Request No. 40, they only sought confirmation from the County that it had no further documents to provide.  [Doc. 47, p. 12; Doc. 60, p. 7.]  For Request No. 43, Plaintiffs waited until filing their Motion to agree to "tailor the request to surveys involving employment practices . . . ." [Doc. 47, p. 13.]  The Court also notes that Defendant states in the correspondence that was exchanged between counsel that it was agreeing to provide additional information and/or documents [Doc. 46-2.]  It is unclear to the Court whether additional information and/or documents were provided, but it appears from the pleadings that counsel made no effort to narrow the items in dispute based on the Defendant's agreement to provide more information and/or documents.

---

comparing views, further explaining or clarifying their position, and if appropriate, offering a compromise in order to resolve the dispute.

A motion to compel is not the appropriate vehicle for working out discovery disputes.  If Plaintiffs' counsel knows requests are overly broad, they should have agreed to limit the requests during the meet and confer process with counsel for the County.  Likewise, if the opposing party is willing to provide the documents in a limited fashion or provide them in a form other than requested, counsel for Plaintiffs must explore these options and be willing to confer with opposing counsel to see if the objections can be resolved or the dispute narrowed so as to assist the Court in reaching a decision and thereby avoid the unnecessary use of judicial resources. The mandatory good faith effort in a meet and confer conference also fulfills the delay and expense cost saving provisions of the Civil Justice Reform Act ("CJRA"), 28 U.S.C. § 471, et. seq. The CJRA and the subsequent amendments to the Federal Rules of Civil Procedure in 1993 and 2000 evidence an intent to simplify and expedite the litigation process and thereby reduce the delay and costs of litigation.

Plaintiffs' counsel has not shown that they met and conferred with counsel for the County in a good faith effort to resolve these discovery disputes prior to seeking the assistance of the Court. Counsel for Plaintiffs also filed Plaintiffs' Motions before the County supplemented its discovery responses or produced additional documents it had agreed to produce.  Under the circumstances, the Court has had to spend an inordinate and unnecessary amount of time trying to decipher what is truly in dispute and come up with solutions to issues that may no longer be in existence or may now be in some status other than as presented in the briefing.[2]

---

[2] Plaintiffs filed an Unopposed Motion to Extend Deadlines [Doc. 93] requesting an extension of the 21-day period under D.N.M.LR-Civ. 26.6 within which to file their motion to compel with respect to the initial discovery. Plaintiffs only sought an extension of seven days to allow counsel "to review the supplemental information provided by the Defendants in advance of preparing any necessary motions to compel." This motion could have, and should have, requested more time and set forth as an additional reason that counsel for Plaintiffs would like to continue to confer with counsel for the County to see if more progress on resolving the discovery disputes could be made before filing a motion to compel.  The Court would have gladly granted such a motion.

Finally, Plaintiffs' Requests for Production that are the subject of Plaintiffs' Second Motion are also in violation of the Court's Order Adopting Joint Status Report and Provisional Discovery Plain with Changes and Setting Case Management Deadlines [Doc. 12] filed February 23, 2012.   In the Order, the Court allowed a maximum of twenty-five (25) Requests for Production by Plaintiffs to Defendants. [Doc. 12, p. 1.] In the Court's Order Amending Case Management Deadlines [Doc. 37], the Court reminded the parties that "[a]ny requests for additional discovery must be submitted to the Court by motion prior to the expiration of the discovery deadline." [Doc. 37, p. 1.] Plaintiffs' Second Motion addresses Requests for Production Nos. 26, 29, 30, 40, 43 and 45.   Although Defendant did not object on this basis, clearly, these requests are beyond the maximum allowed by the Court and Plaintiffs did not seek leave of the Court to expand on the number of Requests for Production.

Since the Defendant did not raise an objection to Plaintiffs submitting more than the allowed number of Requests for Production, the Court will address the Second Motion to Compel on the basis of the objections raised in the Defendant's initial response to their discovery requests and the agreements set for the in Defendant's Response to the Plaintiff's Second Motion [Doc. 47.]  However, Plaintiffs are prohibited from submitting any more Requests for Production and are limited to a total of twenty five (25) Interrogatories and Requests for Admission.  Any requests for additional discovery whether agreed to by Defendant or not must be approved by the Court.

In summary, the failure of Plaintiffs' counsel to comply with the Local Rules of Civil Procedure for the District of New Mexico would justify a denial of Plaintiffs' Motions. Nevertheless, in spite of Plaintiffs failure to comply with the Federal Rules, the Local Rules and the prior Orders of this Court, the Court will address Plaintiffs' Motions on the merits and

instead warn counsel for Plaintiffs and Defendant that any future failures to comply fully with the Federal Rules of Civil Procedure, the Local Rules or the Orders of this Court will result in a recommendation that sanctions be entered against the offending party.

### C.  Defendant's Responses to Plaintiffs' Discovery Requests

The conduct of counsel for Defendant Bernalillo County in responding to the discovery requests at issue is also subject to admonitions from the Court. Boilerplate, blanket objections are improper and of no use to the Court.  *Oleson v. K-mart Corp*., 175 F.R.D. 570, 571 (D. Kan. 1997).  A "proper" objection is one that is tailored to the individual discovery request, not a conclusory objection such as "vague," "ambiguous," "overbroad" or "unduly burdensome" which neglects to say why the discovery request is subject to that objection.  Further, the Defendant generally responded to several discovery requests after stating an objection. This is also not a recommended practice. The Court would point out to Defendant's counsel that making an objection and then responding to the interrogatory may waive the objection. *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 660-61 (D. Kan. 2004); see, 8B C.A. Wright, A.R. Miller & R. L. Marcus Federal Practice and Procedure §2173 (3rd ed. 2010). In the interest of fairness, the Court will ignore Defendant's boilerplate objections unless they are on point and rule on the more specific objections taking into consideration Defendant's responses.

### RELEVANT LAW

### A.  Discovery in General

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."  Fed.R.Civ.P. 26(b)(1). "The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, discovery shall be limited by the Court

"if it determines that ... the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. (b)(2)(iii). Federal courts have held that the scope of discovery under Rule 26 is deliberately broad. *Hickman v. Taylor*, 329 U.S. 495, 501 (1974); see *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995); *Sanchez v. Matt*, 229 F.R.D. 649, 654 (D.N.M. 2004 (Browning, J.).

A discovery request is considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005). Consequently, a request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party. *Id.* When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Id.* Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request. *Cardenas*, 232 F.R.D. at 382-83. A district court is not, however, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." *McGee v. Hayes*, 43 Fed.Appx. 214, 217 (10th Cir. 2002) (unpublished). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez*, 50 F.3d at 1520.

A party is required to answer an interrogatory separately and fully, unless it is objected to, in which event the objecting party will answer to the extent the interrogatory is not objectionable. Fed. R. Civ. P. 33(b)(1). "[A]ll grounds for an objection to an interrogatory shall be stated with specificity." Fed. R. Civ. P. 33(b)(4). The burden is on the objecting party to show why an interrogatory is improper. 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2173, at 291-92. Unless an interrogatory is vague or overly broad on its face, the party objecting to discovery as vague or overbroad has the burden to show such vagueness or overbreadth. *In re Urethane Antitrust Litig*., 237 F.R.D. 454, 458 (D. Kan. 2006) on reconsideration sub nom. *In re: Urethane Antitrust Litig*., 04 MD 1616JWL DJW, 2007 WL 140987 (D. Kan. Jan. 17, 2007).  Likewise, a party on whom a request for production is served must state that inspection and related activities will be permitted as requested, or raise an objection. If an objection is made to part of an item or category, that part shall be specified and inspection permitted of the remaining parts. Fed. R. Civ. P. 34(b).

**B.  Rule 23 Class Certification Requirements**

At this stage of the case, the issue is whether the proposed discovery is relevant to class certification. *Barnhart v. Safeway Stores, Inc*., 25 Fed. R. Serv. 3d 35, *2 – 3 (E.D. Cal. 1992). Discovery on class certification is not a matter of ascertaining whether Plaintiffs will prevail on the merits, but whether the moving party can establish that the discovery is pertinent to Fed.R.Civ.P. 23 class certification requirements. Nonetheless, a consideration of the merits, to a certain extent, is inextricably intertwined with the Rule 23 requirements of commonality and typicality.  *Id.*

Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or

fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class). Fed.R.Civ.P. 23(a); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S. Ct. 2231, 2245, 138 L. Ed. 2d 689 (1997).

In addition to satisfying the Rule 23(a) prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3).   Fed.R.Civ.P.23(b); *Amchem Prod.*, 521 U.S. at 614.   Plaintiffs assert that either Rule 23(b)(2) or (3) are applicable to their case.  [Doc. 1, pp.10, 11; Doc. 42, p. 4; Doc. 47, pp. 3 – 4.]  Rule 23(b)(2) permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class." *Amchem Prod.*, 521 U.S. at 614.  To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must "predominate over any questions affecting only individual members"; and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prod.*, 521 U.S. at 615.

1. Commonality

To meet the "Commonality" requirement, members of a putative class must "possess the same interest and suffer the same injury." *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 620 (D. Kan. 2008) (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). "A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees." *Id.* (quoting *Thorn v. Jefferson–Pilot Life Ins. Co*., 445 F.3d 311, 319 (4th Cir.2006)). A question is not common, by contrast, if its resolution "turns on a consideration of the individual circumstances of each class

member." *Id.* "The significance of commonality is self-evident: it provides the necessary glue among class members to make adjudicating the case as a class worthwhile." *Id.* (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 182 (3rd Cir.2001)). The threshold for commonality is not high, and does not require that class members share every factual and legal predicate. *Id.* A single common issue of fact or law shared by the class will satisfy the requirement of Rule 23(a)(2). *Id.*  Either common questions of law or fact presented by the class will be deemed sufficient and factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist.  *K.L. v. Valdez*, 167 F.R.D. 688, 690 (D.N.M. 1996).

2.  <u>Typicality</u>

A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. *K.L.*, 167 F.R.D. at 691. Rule 23(a)(3) precludes certification unless the claims and defenses of the representative parties are typical of the claims or defenses of the class. *Thompson*, 250 F.R.D. at 622.  A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). *Id.* Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large. *Id.* Typicality does not require that the claims of class members be identical to the claims of the representative class plaintiffs. *Id.* (citing *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir.1982)). "[D]iffering fact situations of class members do not defeat typicality ... so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Id.* (quoting *Adamson v. Bowen*, 855 F.2d 668, 675

(10th Cir.1988)). The typicality requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large. *Id.*

### C. Pre-Certification Discovery

The recognized need for pre-certification discovery is subject to limitations imposed by the Court. "(T)he management of discovery is committed to the sound discretion of the trial court ...." *Nat'l Org. for Women, Farmington Valley Chapter v. Sperry Rand Corp.*, 88 F.R.D. 272, 277 (D. Conn. 1980). The discovery permitted must be sufficiently broad in order that the plaintiffs have a realistic opportunity to meet the requirements of Rule 23; at the same time, the defendant must be protected from discovery which is overly broad, unduly burdensome, irrelevant, or which invades privileged or confidential areas. Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification. *Id.* Unnecessarily broad discovery will not benefit either party. *Id.* In light of these legal standards, each Interrogatory and Request for Production is addressed separately below.

<u>**ANALYSIS**</u>

### I.  <u>**Plaintiffs' First Motion**</u>

### A. Interrogatories

In Plaintiffs' First Motion, Plaintiffs seek to compel responses to Interrogatory Nos. 5, 6, 7, 8, 13, 15, 17, 18 and 19.

<u>Interrogatory No. 5:</u> Identify each formal or informal inquiry, complaint, grievance, expression of concern, administrative proceeding, or lawsuit lodged, made, or filed against the County (whether by a current or former employee, government or administrative entity, or third party) concerning gender discrimination and/or sexual harassment including, without limitation, the caption of the case, the agency/court in which it was filed, the department(s) involved, the person/entity/organization who initiated it, the date if was initiated and the date the matter was closed.

The County objected to Interrogatory No. 5 as overly broad, unduly burdensome, and not relevant to class certification. [Doc. 41-1, p. 4.] The County contends it is impossible for it to identify each *informal* inquiry complaint, grievance, expression of concern, administrative proceeding, or lawsuit made, or filed against the County. [Doc. 46, p. 4.] Plaintiff argues that the discovery sought is relevant to commonality. [Doc. 42, p. 9.] Plaintiffs agree to limit the time frame of the request to June 18, 2005 to the present. [Doc. 42, p. 9.]

The information sought is relevant to class certification. Discovery seeking information relating to other charges of discrimination which may have been raised against defendant by its employees in the past is, as a "general proposition," relevant because the existence of a pattern of discrimination in a job category may well justify an inference that the practices complained of were motivated by improper factors. *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 194 (D.N.J. 2010) aff'd, CIV. 08-6292, 2010 WL 3724271 (D.N.J. Sept. 15, 2010). However, the request is overly broad and unduly burdensome on its face. In order to comply regarding informal inquiries, the County would have to monitor the conversations of every employee, former employee, government or administrative entity and third party with regard to discrimination or sexual harassment at the County. In addition, the County would have to comb through the personnel files of all current or former employees to see if there is a written record of an "informal" complaint. Therefore, with respect to *informal* inquiries, complaints, grievances, or expressions of concern, the County's objections are sustained.

Ruling: Plaintiffs' motion with respect to Interrogatory No. 5 is GRANTED in part. The County will identify any *formal* complaints in its possession regarding current or former employees concerning gender discrimination and/or sexual harassment, from June 18, 2005

through the present. A "formal" complaint means an EEOC charge, a NMHRB charge or a

lawsuit.

Interrogatory No. 6:[3] Separately for each department from June 18, 2007 to the present, identify each person employed in Grades C-H in that department. For each employee identified, state the person's name, gender, job title and/or position, grade, step, base salary, total compensation and dates of employment (if the person's job title and/or position changed, give the department, base salary, total compensation and dates of employment for each job title and/or position identified in response to this Interrogatory).

Interrogatory No. 7: Separately for each department identify each employee in grades C-H who received a compensation change for any reason at any time from June 18, 2007 to the present. For each such compensation event, state the date of the compensation change, the starting and ending pay, the starting and ending grade and step, the nature of the compensation change (e.g. career ladder, promotion, additional duties, temporary supervisory responsibilities, demotion, transfer, part-time, etc.), level of education and years of experience at the time of the pay change, the text of any rule or policy concerning such pay change, identify all persons involved in initiating, reviewing and/or approving the pay change, and identify any documents regarding the pay change.

Interrogatory No. 8: Separately for each department from June 18, 2007 to the present, identify each person who was engaged as a "term" or "backfill"[4] employee. For each person identified, state the person's name, gender, job title and/or position, grade, step, base salary, total compensation, dates of engagement/employment, (if the person's job title and/or position changed, give the department, base salary, total compensation and dates of employment for each job title and/or position identified in response to this Interrogatory), the text of any statement, rule or policy concerning such term/backfill employees. Identify all persons involved in initiating, reviewing and/or approving the selection or compensation of each person identified.

The County initially objected to all three Interrogatories as overly broad, unduly burdensome, and not relevant to class certification. [Doc. 42-1, pp. 4 – 6.] In spite of the objections, the County appears to have produced much of the information requested in database drives and "live" spreadsheets. [Doc. 42-1, pp. 4, 5 and 6; Doc. 46, p. 5.] The County asserts in order to further respond to the requests, it would "have to pull 459 personnel files to check what

---

[3] In their briefing, the parties address Interrogatory Nos. 6, 7, and 8 together and, therefore, the Court will address all three together as well.

[4] The County asserts it does not use the term "backfill" to define any type of employee. [Doc 46, p. 8.] Plaintiffs' contend that the County in fact uses the term "backfill" to describe employment positions. [Doc. 54, p. 5.] As used by Plaintiffs in their discovery requests, "term" or "backfill" employees appear to be the same thing and it is apparent the County understands the classification of employees to whom Plaintiffs are referring regardless of how they are defined.

occurred at each position change" thereby rendering the request unduly burdensome. [Doc. 42-1, p. 3; Doc. 46, p. 4 – 6.]  However, the County indicates it is compiling "compensation review packets" which will be produced as part of the County's Third Supplemental Responses. [Doc. 46, p. 6.]  The compensation packets will include "documentation for salary pay changes, the date of the request, the analysis conducted to approve or deny the request, the starting grade, step, pay and department of the employee, along with the ultimate decision, who made the decision and why that decision was reached." [Doc. 46, p. 7.]  The information the County proposes to produce sufficiently responds to Plaintiffs' requests.

Ruling: Plaintiffs' motion with respect to Interrogatory Nos. 6, 7 and 8 is GRANTED in part.  The County will produce the compensation review packets, as it agreed to do in its Response. [Doc. 46, p. 6-7.]  Plaintiffs' motion is otherwise denied.

Interrogatory No. 13: Identify every person that Defendant has interviewed in connection with any investigation into the allegations in this lawsuit, and for each such person state whether Defendant has obtained a written statement from such person and identify any documents collected from or shared with each interviewee.

The County objected to Interrogatory No. 13 on the grounds that it sought information protected by the attorney-client privilege and the attorney work-product doctrine, and it is not relevant to class certification. [Doc. 42-1 p. 8.]  Plaintiffs do not address the issue of whether the information sought is relevant to class certification. [Doc. 42, p. 12; Doc. 54 p. 6.] Rather, Plaintiffs focus on the privilege issue criticizing Defendant for not providing a privilege log.  *Id.*

The information sought is more likely relevant to the merits of the individuals' claims rather than to class certification.  Interviews may provide individual perspectives on the merits of Plaintiffs' claims but it is unlikely that they would be of assistance in the determination of numerosity, commonality, typicality or adequacy. In addition, Defendant asserts that it has no such statements.  [Doc. 46, p. 8.]

15

Ruling: Plaintiffs' motion with respect to Interrogatory No. 13 is DENIED.  The Court need not decide at this point whether the information sought is protected under the attorney-client privilege or the attorney work-product doctrine.

Interrogatory No. 15: Are there any policies, practices, guidelines, or procedures for evaluating applicants for term/backfill positions, regular hires, or promotions? If so, please identify: (a) all documents including email, that relate to, explain or communicate such policy(s), practice(s), guideline(s) or procedures(s); each person with substantive responsibility, on a County-wide basis, for design or development of such policy(s), practice(s), guideline(s) or procedure(s); and each person with substantive responsibility for monitoring the impact of such policy(s), practice(s), guideline(s) or procedure(s) on Defendants' equal employment opportunity commitments to their female employees.

The County objected to Interrogatory No 15 as overly broad, unduly burdensome, and not relevant to class certification. [Doc. 42-1, p. 9.] Plaintiffs argue that Defendant should identify those individuals responsible for the design, development and monitoring of County policies and how the policies have been communicated to individual managers.  [Doc. 42, p. 13.]

Unlike claims based on disparate treatment, class actions pursued under a disparate impact theory do not require the plaintiff to prove discriminatory motive or intent. *Stambaugh v. Kansas Dept. of Corr.*, 151 F.R.D. 664, 668 (D. Kan. 1993) (citing *International Broth. of Teamsters v. United States*, 431 U.S. 324, 336 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977)). This theory addresses those employment practices and policies that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. *Id*. (internal quotations and brackets omitted). "[T]he necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Stambaugh,* 151 F.R.D. at 668 (quoting *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 987, 108 S.Ct. 2777, 2785, 101 L.Ed.2d 827 (1988)).

"To establish a prima facie case of disparate impact discrimination, plaintiffs must show that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group." *Stambaugh*, 151 F.R.D. at 668 (quoting *Ortega v. Safeway Stores, Inc.*, 943 F.2d 1230, 1242 (10th Cir.1991)). In other words, the conceptual gap between an individual's discrimination claim and "the existence of a class of persons who have suffered the same injury," must be bridged by "[s]ignificant proof that an employer operated under a general policy of discrimination," *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545, 180 L. Ed. 2d 374 (2011) (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157–158 and 159, 102 S.Ct. 2364, 72 L.Ed.2d 740). Therefore, plaintiffs may look to statistics to show the disparate impact. *Stambaugh,* 151 F.R.D. at 668 (citing *Ortega,* 943 F.2d at 1243).

In this case, the policies and how they were implemented are relevant to Plaintiffs' disparate impact claims. The County has produced its written policies with respect to hiring and compensation practices for term positions and regular hires. [Doc. 42-1, p. 9.] The County has additionally produced spreadsheets and has agreed to produce compensation review packets which the County represents provide additional statistical data with respect to changes in compensation for each employee in grades C-H. Plaintiffs' request goes beyond that, however, and seeks information on how, and who, designed and developed the policies and the identification of a person "with substantive responsibility for monitoring the impact." [Doc. 42-1, pp. 8 -9.] This information is not relevant to the question of whether the policies themselves had a disparate impact on the alleged class.

Whether the policies, as designed and developed, are discriminatory or promote a discriminatory practice may be determined by looking at the policy itself. If the policies are neutral on their face, whether the implementation causes a disparate impact may be determined

by the statistical data. The identification of the individual or individuals that designed and developed the policies are not relevant under either circumstance. Similarly, whether the County assigned a specific person to monitor the policies' impact is not relevant to whether the policies actually resulted in a disparate impact.

On the other hand, how policies are communicated to supervisors is relevant to establish whether a disparate impact occurred. For example, if the policies are neutral on their face, but supervisors were told to ignore the policy when hiring, this practice may lead to a discriminatory result. Therefore, what was communicated to supervisors with regard to how to implement the policy, and who communicated that practice to supervisors, is relevant to determine whether the implementation and interpretation of the policy created a disparate impact. The County has not established that the production of this evidence for the class period is unduly burdensome.

Ruling: Plaintiffs' motion with respect to Interrogatory No. 15 is GRANTED in part. In addition to the written policies and spreadsheets which have already been produced and the compensation review packets the County has agreed to produce, the County will produce documentation, including emails, which relate to, explain, or communicate to supervisors the policies, practices, guidelines and procedures for evaluating applicants and setting compensation for term/backfill positions, regular hires, and promotions, from June 18, 2007 to the present.

Interrogatory No. 17: Describe how records regarding attendance at sexual harassment or equal employment opportunity training are maintained.

The County objected to this interrogatory as not relevant to class certification. [Doc. 42-1, p. 10.] Plaintiffs contend that the information sought is relevant to the County's efforts, on a County-wide basis, to comply with its EEO, anti-discrimination and harassment policies and to instruct decision-makers on the obligations and how to comply. [Doc. 42, p. 14.]

Whether and what efforts the County made to keep records regarding attendance at training programs regarding its EEO, anti-discrimination and harassment policies is not relevant to class certification.  The issue for certification purposes is whether the implementation of the policies had a disparate impact on female employees, not whether and how records were maintained.

Ruling: Plaintiffs' motion with respect to Interrogatory No. 17 is DENIED.

Interrogatory No. 18: Describe how records regarding job applicants are maintained.

The County objected to this interrogatory as not relevant to class certification. [Doc. 42-1, p. 10.] Plaintiffs contend that the answer to the question of how the records are maintained would answer other questions such as: "do the hiring managers keep the applications related to the openings or does the HR department keep them? how are they purged? who is responsible for maintaining them? are the searchable? how are the online applications maintained?"  [Doc. 42, p. 14.]   None of the questions raised by Plaintiffs in this Interrogatory are relevant to class certification.

Ruling: Plaintiffs' motion with respect to Interrogatory No. 18 is DENIED.

Interrogatory No. 19:   Is there a person, committee, or body responsible for equal employment opportunity and/or the County's efforts to assure equal employment opportunities are accorded to people of protected bases?  If yes, please identify the person or describe the committee or body, including the date of its inception.

The County objected to this interrogatory as not relevant to class certification.  [Doc. 42-1, p.10.] Plaintiffs maintain that information about the nature of Defendant's management organization as it relates to the degree of centralization and uniformity of policies and practices is relevant to the issue of commonality. [Doc. 42, p. 15.]

Plaintiffs rely on *Stastny v. S. Bell Tel. & Tel. Co*., 628 F.2d 267, 277 (4th Cir. 1980) in support of their contention that centralized decision-making/organization is a factor in

commonality.   [Doc. 42, p. 15.]   In *Stastny*, the Fourth Circuit referenced factors used by a California District Court to determine whether the class should be certified.  *Stastny*, 628 F.2d at 277 (citing *Harriss v. Pan American World Airways, Inc.*, 74 F.R.D. 24, 41 (N.D. Cal. 1977) (footnote omitted)).   One of the factors is "[w]hat is the nature of the employer's management organization as it relates to the degree of centralization and uniformity of relevant employment and personnel policies and practices?" *Id*.   This factor relates to the nature of the employer's management organization as a whole rather than the identification of a specific individual, committee, or body tasked with EEO compliance, as Plaintiffs suggest.

In determining commonality, a court may look at the employer's management or structural organization to determine whether there is centralized or subjective decision-making that causes discrimination. See, e.g., *Armstrong v. Powell*, 230 F.R.D. 661, 675 (W.D. Okla. 2005) (finding that "[a]bsent centralized decision-making or some other identifiable common "practice" of discrimination, any acts of discrimination suffered by the Plaintiffs through their non-selection cannot be construed as company-wide."); *Anderson v. Boeing Co.*, 222 F.R.D. 521, 536 (N.D. Okla. 2004) (finding plaintiffs established commonality because defendant allowed subjective-decision making with the knowledge that it perpetuated intentional discrimination against women); and *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 675 (D. Kan. 2004)(holding "[a]llegations of decentralized, individualized decision-making are fatal to Plaintiff's ability to set forth a common claim of promotion discrimination.").   The identification of a person, committee, or body responsible for EEO compliance is not relevant to class certification because it would not serve to establish whether there was centralized or subjective decision-making in the hiring process.

Ruling: Plaintiffs' motion with respect to Interrogatory No. 19 is DENIED.

**B.  Requests for Production**

Plaintiffs seek to compel responses to Request for Production Nos. 2, 3, 4, 14, 18, 19, 22, & 24.

Request for Production No. 2: All documents regarding compensation studies or analyses including, but not limited to, documents reflecting requests or directives by any person, body or entity to conduct such analyses, requests for proposals issued by the County to conduct such analyses, internally conducted analyses, documents relied on in conducting such analyses, results of such analyses, and recommendations regarding such analyses.

The County initially objected on the grounds that the request is overly broad, unduly burdensome and vague with respect to time.  [Doc. 42-3, p. 1.] In spite of the objections, the County agreed to produce compensation studies from June 18, 2007 to the present. *Id.*  Plaintiffs' chief complaint is that, while the County has produced documents responsive to this request, the production was late in coming. [Doc. 42, p. 15.]   Plaintiffs also contend that responsive documents have not been produced such as interview and questionnaire materials and documents from the request for proposal process.  [Doc. 42, p. 16.] Plaintiffs further express concern with regard to the County withholding information Plaintiffs discovered through research of its own. [Doc. 54, p. 7; Doc. 46-1, p. 9; Doc. 54, p. 7.]    The County explains that classification and compensation studies were initiated, but not completed.  [Doc. 46, pp. 12 -13.]  The first phase resulted in a draft report but the project was put on hold and the second phase has not yet been initiated. *Id.* Documentation showing the progress of the study has been produced. [Doc. 46, p. 13.] The County has additionally agreed to produce position questionnaires.  *Id.*

Plaintiffs claim in addition to the questionnaires, the County should produce "names from all departments, other documents involved in the [RFP] process etc., audit findings, memoranda, reports and recommendations."  [Doc. 42, p. 16.] This information goes beyond the initial request.  Also, it appears some of the "reports and recommendations" may not yet exist. Finally,

Plaintiffs do not limit their request with respect to time and do not explain why a time frame beyond the class period is necessary.

Plaintiffs further complain that the County only produced documents in response to their meet and confer letter.   [Doc. 42, p. 15.]   This is, in fact, the purpose and function of the requirement that the parties confer in good faith.   When parties communicate and clarify what is being sought or what will be produced, responsive documents may be produced despite a broadly framed request for production and initial objections.   Plaintiffs cannot now complain that the process actually worked. As noted previously, the Court is of the belief that many of the disputes raised in Plaintiffs' Motions could have been resolved if counsel had continued to confer in good faith rather than file a motion to compel based on the initial positions set forth in the letters that were exchanged. The fact that an opposing party disagrees with your initial argument or position regarding written discovery does not justify the immediate filing of a motion to compel.

Ruling: Plaintiffs' motion with respect to Request No. 2 is DENIED.

Request for Production No. 3: For employees who were employed in grades C-H at any time from June 18, 2007 to the time of trial, provide all personnel records from their time of application for employment to time of trial including records for, but not limited to: Jennifer Gallegos, Priscilla Gutierrez, Cassandra Gutierrez, Emily Hernandez, Stephanie Manzanares, Patricia Vigil, Maria Zuniga, Mindy Hoerter, Robert Baker, Nolan Bennett, Kevin Callahan, Adan Carriaga, Joshua Castellano, Dennis Chavez, Ted Encinias, Martin Gallegos, Ray Garcia, Martin Garrison, Richard Harding, Anthony Infantino, Kevin Kinzie, Andi Lako, Randall Landavazo, Francisco Lucero, Edwin Martinez, Cordero Montoya, Mario Ruiz, Victor Schexnayder, Kevin Sourisseau, Cody Stinson, Julian Barela, and Dan Mayfield.

Plaintiffs correctly point out that the County agreed to produce redacted personnel files. [Doc. 42, pp. 16 – 17; Doc. 42-2, p. 2.] However, it is clear the County only agreed to produce the personnel files of the individuals named in the request.   Those have been produced and by doing so, the County did not waive its objections that the request was overly broad and unduly burdensome. [Doc. 42-3, p.2; Doc. 42-4, p. 2; Doc. 42-5, p. 3.]

22

The County explains that it took numerous County employees several weeks to pull and copy the thirty-two files of the individuals named in Plaintiffs' request.  [Doc. 46, p. 13.]  The County further points out that it would have to employ several full time people to pull, copy review and redact the personnel files for all employees who may be members of the proposed class. [Doc. 42-5, p. 3; Doc. 46, p. 14.]  Further, according to the County, the information sought by Plaintiffs can be found in the responses to other discovery requests.  *Id.*  The burden on the County to produce personnel files for almost 500 employees is too great to compel production.

Ruling: Plaintiffs' motion with respect to Request No. 3 is DENIED.

Request for Production No. 4: All job descriptions, job postings, advertisements, and other documents that describe all the requirements and qualifications for each position in grades C-H at the County, including, but not limited to, educational requirements, work experience requirements, references, and recommendations of supervisors.

Plaintiffs' acknowledge that the County has produced documents responsive to this request for the class period.  [Doc. 42, p. 17.] However, Plaintiffs contend that the County has failed to fully respond to the request by not including supervisors' communications and/or recommendations to HR on educational requirements, work experience requirements, and references.  [Doc. 42, p. 18.]  The County contends that the Plaintiffs are extending the scope of their initial request.  [Doc. 46, p. 16.]  The Court agrees. A motion to compel is not a proper vehicle to expand on a request that has already been satisfied.

Ruling: Plaintiffs' motion with respect to Request No. 4 is DEINED.

Request for Production No. 14: Any documents describing or summarizing the results of any investigation of allegations of sex discrimination or sexual harassment by County employees or supervisors, including any investigation related to the allegations in the charges filed by the named Plaintiffs.

The County objects to the request as overly broad, unduly burdensome, not relevant to class certification, and vague with respect to time.[5]  Plaintiffs argue that documents describing or summarizing the results of investigations of gender discrimination are relevant to commonality and typicality. [Doc. 42, p. 18.] Defendant counters that the request includes gender discrimination and sexual harassment issues not relevant to Plaintiffs' claims with regard to compensation, hiring, promotion, transfer, recognition, allocation of assignments and expectations, and other conditions and privileges of employment. [Doc. 46, p. 17.]

While discovery seeking information relating to other charges of discrimination which may have been raised against the County by its employees in the past is relevant to an alleged pattern and practice of discrimination, *Bell*, 279 F.R.D. at 194, descriptions, summaries, and the results of any investigations are not relevant to class certification.

Ruling:  Plaintiffs' motion with respect to this Request No. 14 is DENIED.

Request for Production No. 18: All documents related to the County's career ladder(s) which were in use from June 18, 2007 to the time of trial, including the purpose of the system, in what circumstances it is used, and any records that are maintained related to the career ladder(s).

The County objected to this request as overly broad, unduly burdensome, and not relevant to class certification.  The County further objected to the time frame because the request sought documents that may not be in existence. [Doc.42-3, p. 8.] Despite these objections, the County produced Career Ladder Program guides for each department with the purpose of the program noted in each.  [Doc. 42-5, p. 16.]

---

[5] In their Response, the County seeks to assert an objection that the documents requested are protected by the attorney work-product doctrine and the attorney-client privilege.  [Doc. 46, p. 17.]  These objections were not raised in the County's initial responses and, therefore, they are waived.  *Sonnino v. Univ. Kansas Hosp. Auth.*, 220 F.R.D. 633, 657 on reconsideration in part sub nom. *Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661 (D. Kan. 2004).  In any event, since the Court will deny Plaintiffs' motion on other grounds, the subsequent objections are moot.

Plaintiffs argue that while the County produced some documents and those related to the career ladder for Plaintiff Cassandra Gutierrez, there were very few documents produced for other employees. [Doc.42, p. 19.] Plaintiffs claim they seek "emails, personnel files (personnel action forms), memoranda, supervisor recommendations and the like that address the career ladder, where certain employees are placed in the career ladder, documents evidencing why a particular employee may be placed where he/she is, and the circumstances in which the ladder was used and why." *Id.* This explanation of what Plaintiff is seeking goes far beyond what was originally requested. Plaintiffs only requested "documents related to the Career Ladders which were in use" and the "records maintained" relating to the career ladders.  Plaintiffs did not request documents relating to the career ladders for the individual Plaintiffs or the putative class members.  The fact the County produced additional documents regarding one of the Plaintiffs does not obligate it to produce similar documents concerning other employees.  To require the County to do so would require the County to review, redact and produce at least portions of the personnel files for all current or former employees.  As the Court noted in discussing Request for Production No. 3, this would place an undue burden on the County.  The County has fulfilled its obligation with respect to this request and need not supplement its response.

Ruling:  Plaintiffs' motion with respect to Request No. 18 is DENIED.

Request for Production No. 19: All communications reflecting requests for or consideration of pay changes for any employee in grades C-H from June 18, 2007 to the time of trial.

The County has already produced over 250 pages of documents responsive to this request and has agreed to produce compensation review packets in addition to the documents previously produced. [Doc. 46, p. 19; Doc. 42-3, p. 10.]   Plaintiffs seek an order compelling the County to produce what is has already agreed to produce.  [Doc. 42, p. 20.]

Ruling:  Plaintiffs' motion with respect to Request No. 19 is GRANTED.  The County will produce the compensation review packets it agreed to produce.

Request for Production No. 22: All documents that relate to, express, or communicate any guidance to human resources, supervisory or managerial employees on criteria (e.g., education, general job experience, specific job experience at the County, training, time in position, job performance ratings) to be applied in the process of identifying potential candidates or selecting  from the applicant pool for hire or promotions to any position grade C or above for selections which occurred from June 18, 2007 to the time of trial.

The County objected to the request as overly broad, unduly burdensome, not relevant to class certification, and seeking documents that do not yet exist. [Doc. 42-3, p.10.] Notwithstanding these objections, the County states that "no such documents exist." *Id.* Plaintiff responded by clarifying the request in counsel's letter of July 12, 2012.  [Doc. 46-1, p. 14.] Subsequently, the County supplemented its response identifying the job descriptions and job postings previously produced as responsive to the request claiming that these are the only documents relevant to the request. [Doc. 42-5, p. 19.] The documents requested by Plaintiffs are relevant to the issues of commonality and typicality.

Ruling: Plaintiffs' motion with respect to Request No. 22 is GRANTED.  To the extent the County possesses any additional documents communicating to human resources, supervisory, or managerial employees the criteria to be applied in the process of identifying potential candidates or selecting from the applicant pool for hire or promotions to any position grade C or above, beyond the job descriptions and postings or other documents already produced, from June 18, 2007 to the present, those documents will be produced.

Request for Production No. 24: For each change in compensation (including grade or step increases) to any County employee in grades C-H from June 18, 2007 to the time of trial, produce all documents that reflect the name and gender of each candidate actually considered for promotion; the selection criteria applied in each promotion decision; the decision maker(s) actually responsible for analyzing and applying such criteria in each promotion decision; and each person involved in approving the promotion decision.

26

The County objected to this request as overly broad, unduly burdensome, requests answers to questions asked as interrogatories, and seeking documents that do not yet exist. [Doc. 42-3, p. 11.]  The County subsequently stated that it produced documents in response to Request No. 19 that were responsive to this request.   In addition, the County agreed that it would supplement its Response to Request for Production No. 19 by providing compensation review packets. [Doc. 46, p. 21.] The County represents that these compensation review packets will include "documentation for salary pay changes, including the date of the request, the analysis conducted to approve or deny the request, the starting grade, step, pay and department of the employee, along with the ultimate decision, who made the decision and why that decision was reached." [Doc. 46, p. 7.]

Ruling:  Plaintiffs' motion with respect to Request No. 24 is GRANTED.   With the production of the compensation review packets, the County will fulfill its discovery obligations with regard to this request.

## II.    Plaintiffs' Second Motion

In Plaintiffs' Second Motion, Plaintiffs seek to compel responses to Request for Production Nos. 26, 29, 30, 40, and 45.

Request for Production No. 26: From June 18, 2007 to the time of trial all documents providing a description of the job and duties associated with supervisory and management titles/positions.

The County objected to this request as overly broad, unduly burdensome and not relevant to class certification. [Doc. 47-1, p. 1.]  The County also objected to the production of documents that were not yet in existence.  *Id.*  Notwithstanding the objections, the County produced a master list of all positions in Grades C-H along with job descriptions for each position.   [Doc.

52, p. 3.] Additionally, the County produced all positions descriptions for supervisory positions within grades C-H.  *Id.*

Plaintiffs argue that their request should not be limited to grades C-H.  Plaintiffs claim that job descriptions of all supervisors and managers in grades outside of the putative class are relevant to commonality and typicality. [Doc. 47, p. 8; Doc. 60, pp. 2-4.] In determining commonality, a court may look at the employer's management or structural organization to determine whether there is centralized or subjective decision-making that causes discrimination. See, e.g., *Armstrong*, 230 F.R.D. at 675.  Job descriptions of supervisors *outside* of grades C-H who supervise any person *within* grades C-H are relevant to Plaintiffs' claims.  Descriptions of supervisory and managerial positions that do not affect those within the putative class are not relevant.

Ruling:   Plaintiffs' motion with respect to Request No. 26 is GRANTED in part.  The County will supplement its response by producing a description of the job and duties associated with supervisory and management titles/positions for any person outside of grades C-H who supervises any person within grades C-H.

Request for Production No. 29: All documents relating to complaints of unlawful sex discrimination or harassment against the County, Julian Barela, Dan Mayfield or other supervisor, or related to any written compliant of sex discrimination with respect to wages, promotion, transfer, career ladder progression, recognition, allocation of assignments, and/or conditions or privileges of employment from January 2002 to the time of trial including copies of such complaints or agency charges, notes of any internal complaints, documentation of communications regarding complaints, documentation of investigation of complaints, and data regarding the number, frequency, and type of complaints.

The County objected to Request No. 29 as overly broad, unduly burdensome, excessively compound, vague and ambiguous with respect to the term "complaint." The County also objected to the relevancy of the request and the time frame. [Doc. 47-1, p. 3]. Plaintiffs agreed to limit the time frame to July 18, 2005 to the present.  [Doc. 47, p. 9.]  Plaintiffs argue that, similar

to their requests in Interrogatory No. 5 and Request for Production No. 14, Request No. 29 seeks documents relevant to pattern or practice of discrimination.  [Doc. 47, pp. 9 – 10; Doc. 60, p. 5] The Court agrees.  "Discovery seeking information relating to other charges of discrimination which may have been raised against defendant by its employees in the past is, as a 'general proposition,' relevant because the existence of a pattern of discrimination in a job category may well justify an inference that the practices complained of were motivated by improper factors." *Bell*, 270 F.R.D. at 194.   However, the request is overly broad on its face.  While documentation of complaints of discrimination are relevant to class certification, documentation regarding the investigations of any such complaints goes to the merits.  Further, any data with respect to the number, frequency and type of complaint can be garnered from the complaints themselves.

Ruling: Plaintiffs' motion with respect to Request No. 29 is GRANTED in part.  The County will produce any formal complaints in its possession regarding current or former employees concerning gender discrimination and/or sexual harassment, from June 18, 2005 through the present. A "formal" complaint means, an EEOC charge, a NMHRB charge or a lawsuit.

Request for Production No. 30:  All documents reflecting any outside advice provided to the County on how it might monitor, correct or improve its equal employment opportunity compliance efforts/affirmative action efforts/workplace diversity initiatives.

The County objected to this request as overly broad, unduly burdensome, cumulative and on the grounds the request was vague with respect to time.  [Doc. 41-1, p. 3.]  The County did not object on relevancy grounds. The County indicates that it produced several documents in response to this request limiting the time period to June 18, 2007 through the present. [Doc. 47-1, p. 3; Doc. 52, p. 5.]  The County argues in its Response that the documentation before June  2007 is not relevant to class certification issues.   [Doc. 52, p. 6.] Plaintiffs contend that since the

County failed to initially object on relevancy grounds, it should not be allowed to limit the Request to the time frame of June 18, 2007 to the present. [Doc. 47, p. 11; Doc. 60, p. 6.]

Any belated objection is waived. Rule 34(b)(2)(B) requires that a party responding to a document request "either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." While Rule 34 does not provide that the responding party waives an objection if not expressly stated, as in Rule 33, it is well established that "all grounds for objections to a request for production under Rule 34 must be specifically stated in a timely response or they are waived." *Robinson v. City of Arkansas City, Kan.*, 10-1431-JAR, 2012 WL 1674255 (D. Kan. May 14, 2012).

While Defendant did not raise a relevancy objection to the Request, they did raise the objection that the request was vague with respect to time and, therefore, limited the temporal scope of their response.   [Doc. 41-1, p. 3.]    "With regard to temporal scope, discovery of information both before and after the liability period within a Title VII lawsuit may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period." *Johnson v. Kraft Foods N. Am., Inc*., 238 F.R.D. 648, 652 (D. Kan. 2006).  "The task of the trial court is to balance the relevance of the information against the burden of production on Defendants."  *Id*.  Therefore, the relevance of documentation outside of the class period must be considered in order to determine the appropriate temporal scope of the request.

Plaintiffs argue that the temporal scope should be expanded to ten (10) years before the class period. [Doc. 60, p. 6.]  According to Plaintiffs, that time frame would demonstrate whether "a compliance issue was identified and whether the County undertook any efforts to comply with

the recommendation."   *Id.* However, these issues are not relevant to class certification.   For example, even if the County received such recommendations and made efforts to comply with them, they may still have had a pattern and practice of discrimination.   Therefore, the documentation requested outside of the class period does not assist in the determination of whether the County had a pattern and practice of discrimination during the alleged class period. Since documents requested outside of the class period, in this instance, are not relevant to class certification issues, the temporal limitation used by the County is appropriate.

Ruling: Plaintiffs' motion with respect to Request No. 30 is DENIED.

Request No. 40: All documents related to any policy, practice, guideline, or procedure establish by the County used from June 18, 2007 to the time of trial governing the process of interviewing candidates for positions in grades C-H.

The primary concern raised by Plaintiffs regarding this request is that it is unclear whether the County has produced all responsive documentation. [Doc. 47, p. 12.]   In its Response, the County confirmed it has no further documentation to provide. [Doc. 52, p. 7.] Therefore, Plaintiffs agree there is no dispute with regard to this request. [Doc. 60, p. 7.]

Ruling: Plaintiffs' Motion with respect to Request No. 40 is DENIED.

Request for Production No. 43:  All employee surveys conducted from June 18, 2002 to the time of trial and the data obtained from such employee surveys.

The County objected to this Request as overly broad, unduly burdensome, not relevant to class certification, and to producing documents that do not yet exist.  [Doc. 47-1, p. 9.]  In spite of these objections, the County produced "Employee Exit Interviews" from 2007-2009 and 2010-2012.  [Doc. 52, p. 7] In their motion, Plaintiffs agree their request is overly broad and seek to "tailor the request to surveys involving employment practices . . . ." [Doc. 47, p. 13.]   As discussed above, a motion to compel is not the time for the parties to work out their discovery differences.   If Plaintiffs knew their request was overly broad, they should have limited the

request well before approaching the Court.   Request No. 43 is overly broad and unduly burdensome on its face.  The County's objections are sustained.

Ruling: Plaintiffs' motion with respect to Request No. 43 is DENIED.  The County need not supplement its response.

Request for Production No. 45:  All documents related to any oral or written complaint of gender discrimination and/or sexual harassment submitted by any of the named Plaintiff's from June 18, 2007 to the time of trial including any notes, reports or other documents related to any investigation of their complaint(s) and/or describing or summarizing the results of any investigation and/or any disciplinary action taken against any employee as a result.

The County objected to this Request as not relevant to class certification.  [Doc. 47-1, p. 10.]  "A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees." *Thompson*, 250 F.R.D. at 620 (quoting *Thorn*, 445 F.3d at 319). A question is not common, by contrast, if its resolution "turns on a consideration of the individual circumstances of each class member." *Id*.  While the information with regard to complaints by the named Plaintiffs is directly related to the individual circumstances of each individually named Plaintiff, that information, along with evidence of any other complaints, is relevant to whether the County had a pattern and practice of discrimination. *Bell,* 270 F.R.D. at 194.  On the other hand, documents describing or summarizing the results of any investigation into the complaints goes to the merits of the claims and is not relevant to class certification.

Ruling: Plaintiffs' motion with respect to Request No. 45 is GRANTED in part.  The County will produce documents related to any oral or written compliant of gender discrimination and/or sexual harassment submitted by any of the named Plaintiffs.

**ATTORNEY'S FEES**

Plaintiffs have requested that they be awarded attorneys' fees incurred in presenting these motions.  As the Court has stated in above, it appears that many of the issues in dispute were or could have been resolved had counsel conducted a good faith, in person meet and confer conference.  It also appears that this motion was filed before the County supplemented its discovery responses or produced additional documents it had agreed to produce.  Under the circumstances, the Court has had to spend an inordinate and unnecessary amount of time trying to decipher what is truly in dispute and come up with solutions to issues that may no longer be in existence, may be partially resolved, or in some status other than presented in this motion. Plaintiffs' request for attorney's fees will be denied.[6]

**CONCLUSION**

Plaintiffs' Motion to Compel Defendant Bernalillo County's Answers to Plaintiffs' First Interrogatories and Defendant's Response to Plaintiffs' Second Requests for Production of Documents and Supporting Memorandum [Doc.42] and Plaintiffs' Motion to Compel Defendant Bernalillo County's Responses to Plaintiffs' Third Request for Production of Documents and Supporting Memorandum [Doc. 47] are hereby GRANTED in part, as set forth herein.  The County will have thirty (30) days from the entry of this Order to supplement its discovery responses.  Plaintiffs' request for attorney's fees is DENIED.

**IT IS SO ORDERED.**

_____
Alan C. Torgerson
United States Magistrate Judge

---

[6] In view of the failure of counsel to meet and confer in a good faith attempt to resolve the disputes in Plaintiffs' Motions, the Court will require counsel in this case only, to submit an Affidavit outlining specifically and in detail what steps were taken during the meet and confer process in support of any further motions to compel.